Argued June 26, decided July 9, Rehearing denied Oct. 1, 1912.

### STUBRUD v. FRASIER.

(124 Pac. 657.)

**Appeal and Error—Review—Verdict—Evidence.**

1. Under Section 3, Art. 7, Constitution, as amended November 8, 1910 (Laws 1911, p. 7), providing that no fact tried by a jury shall be otherwise re-examined in any court unless the

court can affirmatively say there is no evidence to support the verdict, the reviewing court will not review a verdict necessarily attributing deceit to the defendant in procuring plaintiff's property, where there is any competent evidence in the record tending to prove such deceit.

**Fraud—Sufficiency of Evidence.**

2. In an action for the conversion of soldiers' scrip and for cash of which the plaintiff was defrauded, evidence held to warrant the jury in finding that defendant practiced deceit on the plaintiff whereby plaintiff was deprived of his property in the scrip.

From Lane:  LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by O. H. Stubrud against E. J. Frasier.   The parties admit that the following writing was executed by them as therein appears:

"Eugene, Oregon, Oct. 8th, 1908.
"Received of O. H. Stubrud fifty dollars part payment of $1,450.00 the purchase price of the Richard Green property in 'Sunset Row' and the Mrs. Chas. Baker property on the northwest corner of 17th and Patterson streets.   The balance to be paid on execution and delivery of warranty deeds to said property as follows, $120.00 cash and 160 acres of soldiers' guaranteed additional script valued at $1,280, provided script is found to be in force.                                    [Signed] E. J. Frasier.
"I hereby agree to the above.
                                    "[Signed] O. H. Stubrud.
"Witness:   Berdina Meredith."

Plaintiff, by his amended complaint, alleges, in substance, that the defendant on the————day of October, 1908, represented to the plaintiff that he (defendant) was the owner in fee simple of the premises hereinafter described, and promised the plaintiff to sell the same to the latter, describing it by lots and blocks.   The plaintiff says that, in reliance upon the defendant's representations of ownership in himself and promises to convey the premises as stated, he delivered to the defendant 160

acres of soldiers' additional homestead scrip and deposited in the Merchants' Bank, at Eugene, Oregon, the sum of $170; the two items being the purchase price of the property. He further avers that the defendant did not at any time intend to convey the property to him, and that, when he demanded the cnoveyance, the defendant refused it and declined to carry out the provisions of the contract; that he made the representation of his ownership of the premises and promised to convey them solely for the purpose of enabling him to obtain possession of the scrip and with intent to cheat and defraud the plaintiff; and that the defendant has, by his fraud and artifice thus outlined, secured the possession of said scrip and has fraudulently converted the same to his own use. He states that by reason of the premises he has been damaged by the loss of the scrip, the same being of the value of $1,480, and in being deprived of the use of the money from the date of the contract until the————day of June, 1909, and demands judgment for damages equivalent to the value of the scrip, $1,480, and interest on the deposit of $170 during the time he was deprived of its use.

The answer of the defendant admits part of the complaint prescribed by reference to words and lines in the original copy, which is not before us, and, so far as the record here is concerned, either in the typewritten transcript or the printed abstract, the admissions are unintelligible to us, probably because the lines and pages do not correspond to the original complaint. Concerning the admitted writing already quoted, the defendant alleges that the scrip was delivered to him with the understanding that the money was to remain on deposit until he had ascertained that the scrip was genuine and in force, after which, but not before, it and the money were to become the property of the defendant, and by warranty deed he was then to convey to the plaintiff the property mentioned in the complaint. Further defending, the answer goes on to state, in substance, that on June 25, 1909, the

parties entered into a subsequent written contract wherein the agreement mentioned in plaintiff's complaint was cancelled, both parties were relieved from all former agreements regarding the scrip and the conveyance of the real property mentioned in the first writing, and the defendant was to release to the plaintiff the $170 deposited and convey by quitclaim deed to the plaintiff certain real property in Florence, Lane County, Oregon, as soon as the United States Government should accept the soldiers' additional scrip for 160 acres of land. Defendant further alleges, in substance, that the scrip was delivered to him for the purpose of ascertaining its genuineness; that he released the $170 to the plaintiff and afterwards tendered the scrip to the land office officials who accepted it in payment for public land described as "S. ½-S.E. ¼, S. ½-S.W. ¼, of section 8, in township 19 south, of range 7 west of the west meridian, in Lane County, Oregon." He alleges that he has been ready, willing, and able to perform all his agreements under both the contracts alleged, but he does not tender any deeds in performance of either of them. Appended to the answer are what is styled Exhibit A, being a copy of the contract already quoted, and Exhibit B, which the defendant alleges to be a copy of the writing of June 25, 1909.

The reply traverses the allegations of the answer. A jury trial resulted in a verdict in favor of the plaintiff for $1,487.39, and from the judgment ensuing, the defendant has appealed.                    Affirmed.

For appellant there was a brief over the names of *Mr. I. N. Harbaugh* and *Messrs. Northrop & Smith,* with an oral argument by *Mr. Fred E. Smith.*

For respondent there was a brief and an oral argument by *Mr. Sjur P. Ness.*

Mr. Justice Burnett delivered the opinion of the court.

In harmony with the provisions of Section 3 of Article VII of the Constitution of this State, as amended at

the general election of November 8, 1910 (Laws 1911, p. 7), this action has been argued and submitted to this court upon the whole testimony and the exhibits admitted in evidence in the court below and here treated as part of the bill of exceptions. It is said in that section that "no fact tried by a jury shall be otherwise re-examined in any court of this State unless the court can affirmatively say there is no evidence to support the verdict," and that, if the Supreme Court shall be of the opinion, upon consideration of the whole testimony attached to the bill of exceptions, the instructions of the court to the jury, and other matters submitted material to the decision of the case, that "the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed notwithstanding any errors committed during the trial." The action was tried in the court below as one of deceit whereby, in reliance upon the defendant's promise to convey the real property in the City of Eugene, the plaintiff was induced to surrender his scrip and to deposit the $170 for the defendant, who refused to carry out his part of the contract, and, having thus gained possession of the scrip, has converted it to his own use to the damage of the plaintiff.

The complaint might well have been treated as one for the conversion of the property to the damage of the plaintiff in the value thereof. The complaint is crowded with epithets and expletives of fraud and over-reaching and the like. Reduced to its lowest terms, however, it amounts to stating that the defendant, being in the possession of scrip of the value of $1,480, the property of the plaintiff, converted said scrip to his (the defendant's) own use to the damage of plaintiff in that sum of money. But, whether the action be treated as one of deceit or one of conversion, the practical result is the same. It is written large throughout the case that, whereas the

plaintiff was the owner of the scrip, the defendant has used it for purchase of land from the public domain, and has not conveyed to the plaintiff anything in return therefor.

An examination of the court's charges to the jury satisfies us that the case was fairly submitted at the trial, and, if any errors in instructions were committed, they were favorable to the defendant. A fair construction of the admitted writing, first quoted, and the actions of the parties in pursuance thereof, shows that it was not the original intention of the parties that the plaintiff should at once part with his ownership of the scrip. It was delivered to the defendant for the purpose of enabling the latter to ascertain whether it was valid or not. Having ascertained that it was genuine and effective, it became then his duty at once to convey the Eugene property to the plaintiff. Giving up the title to the scrip was to be concurrent with conveyance of the property by the defendant to the plaintiff.

1. The defendant relies upon and alleges a later agreement substantially like the first except that it was to be an even exchange of certain property in Florence, Lane County, Oregon, for the scrip. This being denied, he offered in proof a writing which reads as follows:

"Eugene, Oregon, June 25th, 1909.
"In consideration of E. J. Frasier making, executing and delivering to O. H. Stubrud or order, a quitclaim deed to lots numbered one to eighteen inclusive, in block No. 11, in Frasier and Berry's part of Florence as platted and recorded, as soon as the United States Government accepts certain soldiers' additional script for 160 acres of land, said script being this day delivered to said Frasier by said Stubrud, and in consideration of a mutual agreement between said E. J. Frasier and O. H. Stubrud, said Stubrud is hereby authorized to go to the Merchants' Bank and withdraw the deposit money now held by said bank on the said soldiers' additional script agreement, hereby canceling said bank agreement (and hereby pass-

ing complete title to said script to said E. J. Frasier) and thereby annulling all former agreements regarding said script,

"[Signed] E. J. Frasier.    [Seal]
"[Signed] O. H. Stubrud.    [Seal]
"Witness:  Mrs. J. B. Taylor.
        "W. D. Neely."

In the contract of June 25, 1909, as attached to the answer and marked Exhibit B, the part above quoted and included in the parenthesis is omitted, so that, as set out in that pleading, nothing is said in the contract about passing complete title of the scrip to the defendant. As we view the record under the constitutional provision, to which reference has already been made, it is not necessary for us to decide the question of fact involved. Unless we can affirmatively say there is no evidence which the jury might consider in arriving at the verdict which was returned, we cannot reverse the case against the decision of the jury. Putting it more strongly, if we can point out any evidence in the record which the jury was authorized to consider as proving the deceit attributed to the defendant, we must affirm the decision. The jury might properly construe the admitted writing and the actions of the parties in pursuance thereof as a maneuver of the defendant to gain possession of the scrip as a preliminary to what he afterwards did in respect thereto. The defendant testifies with great detail of circumstance about the execution of the alleged agreement of June 25, 1909. He is supported in his testimony by the witness W. D. Neely. He is disputed by the plaintiff, who flatly denies the transaction, and by the other subscribing witness Mrs. J. B. Taylor, who says in substance that she was a clerk in his office at that time, but that, while her name was written there at his request, no such thing as the execution of the instrument ever occurred in her presence.

2. Relative to the genuineness of the signature of Stubrud, attached to the June, 1909, contract, there

appear among the exhibits in evidence 11 pen and ink signatures of the plaintiff, including the signature to the contract of October 8, 1908, and four pencil signatures, all admitted to be genuine. In all these admittedly genuine signatures the upward strokes of the letters are written without any break or lifting of the pen, while in the disputed signature to the contract in question the upward stroke of all the letters, S, t, b, and d, in the name Stubrud, are broken. In the genuine signatures the letter "r" in the surname is very noticeably higher than the two letters "u" in that name, and is written in a comparatively narrow space, while in the disputed signature this letter is scarcely higher than the other letters "u" in the name, and is wide and sprawling. Several other characteristics of the genuine signature might be pointed out which are not present in the one challenged, but enough has been said for illustration showing that there was testimony which the jury might consider as against the authenticity of the agreement of June, 1909. Taking all the circumstances into consideration, the jury might have properly believed that the defendant, by the agreement of October, 1908, obtained possession of the scrip, and then set about devising some means by which he could acquire the title to the same without material loss to himself, in pursuance to which he manufactured the writing of June, 1909, so as to confront the plaintiff with an instrument apparently executed by himself in which the complete title to the scrip was passed to the defendant. In this connection the jury could also note the fact that, in pleading the June, 1909, writing, the defendant had left out the clause providing that the title to the scrip should pass from plaintiff to the defendant, and weigh it as a circumstance inconsistent with his theory that he only took the scrip for examination, and that his acquiring ownership of it was to depend upon the result of his inquiry.

We do not say or decide, as a matter of fact, that the

defendant fabricated this agreement for the purpose of swindling the plaintiff, or at all, but we do say that these circumstances were entitled to go to the jury for what they were worth in determining whether or not the defendant practiced deceit upon the plaintiff so as to deprive the latter of his property in the scrip.

There are several assignments of error not specifically noticed here, but we deem them unimportant in the light of the constitutional provision already mentioned.

The judgment is affirmed.          AFFIRMED.